# FREEMAN, NOOTER & GINSBERG
### ATTORNEYS AT LAW

LOUIS M. FREEMAN  
THOMAS H. NOOTER*  
LEE A. GINSBERG

*NY AND CALIF. BARS

30 VESEY STREET  
SUITE 100  
NEW YORK, N.Y. 10007

(212) 608-0808  
TELECOPIER (212) 962-9696

April 12, 2007

Hon. Kenneth M. Karas  
United States District Judge  
Southern District of New York  
500 Pearl Street  
New York, NY 10007

BY ECF and FAX

RE:   United States v. Shyne, et. al,. including Roberto Montgomery, 05 Cr 1067 (KMK)

Your Honor:

     I am writing in support of the oral application made for the 3500 "prior statements" of co-conspirators whose declarations are being offered by the government even though the declarants themselves are not testifying. Since the co-conspirator declarants are, pursuant to Rule 806 of the Federal Rules of Evidence, subject to impeachment "by any evidence which would be admissible for those purposes if declarant had testified as a witness" we contend that fairness dictates that the 3500 material in the government's possession of prior inconsistent statements should be turned over to the defense.

     I know that the Court has already looked at the only Second Circuit case to discuss (without deciding) the issue, United States v. Jackson, 345 F.3d 59 (2d Cir. 2003) and the case cited therein from the District of Columbia Circuit, United States v. Williams-Davis, 319 U.S. App. D.C. 267, 90 F.3d 490 (D.C. Cir. 1996), as well as several of the cases from D.C. which follow the Williams decision (though in some cases, reluctantly; see, for example, Watkins v. United States, 846 A.2d 293,  2004 D.C. App. LEXIS 156 (D.C. Court of Appeals, 2004)). While the issue was discussed in Jackson, and the author's personal opinion mentioned in a footnote, the issue has not been decided in this Circuit.

The Issue:

     These cases point out the contradiction between Rule 806's broad ability to impeach "by any evidence ... admissible ... if declarant had testified..." with the Jencks Act limitation of production of government reports which states as follows:

>  (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
>  (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement ... in the possession of the United States which relates to the subject matter as to which the witness has testified. 18 U.S.C. § 3500.

While the Jencks Act is somewhat limited (to persons actually testifying), Rule 806 is quite broad. A hearsay declarant may specifically be impeached by showing that he made inconsistent statements, which is the crux of the issue here. See United States v. Trzaska, 111 F.3d 1019, 1024 (2d Cir. 1997). Traska also makes clear that "Under Fed. R. Evid. 806, a hearsay declarant may be impeached by an inconsistent statement that was made prior to or subsequent to the hearsay declaration." 111 F.3d 1019, 1024 note 1. [Emphasis added]. In an unusual case involving the prosecution of a civil rights violation (by murder) 37 years after the fact of it, the court discussed the kinds of materials used for impeachment without identifying them as 3500 material, but which were the type of documents which 3500 material often contains (FBI reports of witness statements):

> Because the district court had admitted Jones' 1966 preliminary hearing testimony, Avants sought to introduce evidence to impeach Jones, the hearsay declarant. Avants moved in limine to have six statements by Jones, including the memorandum, admitted for that purpose. The Government conceded the admissibility of one statement and Avants withdrew his request for four. Regarding the sixth (the memorandum), Avants apparently proposed to use the memorandum as a prior inconsistent statement, admissible under Rules 806 (credibility of hearsay declarants may be impeached) and 613(b) (using prior statements to impeach witnesses). United States v. Avants, 367 F.3d 433, 447 (5th Cir. 2004).

There is no clear way to resolve the contradiction between the limitations of 3500 and the broadness of Rule 806. The defense position is that any meaningful right to confrontation and cross-examination of accusers (in this case, co-conspirators not present in the courtroom) granted by Rule 806 must be accompanied by the grant of the tools to conduct such a confrontation: the right to obtain prior statements of the declarant. Declarant equals witness, under Rule 806, and therefore the right to impeach the declarant should be coterminous with the right to obtain the information in the possession of the government which will allow the defendant to impeach a witness. That right was codified in the Jencks Act.

In the Williams case the court drew an analogy between a different kind of discovery –

that of a defendant's own statements – and it use for Rule 806 impeachment, which was an issue discussed in United States v. Tarantino, 269 U.S. App. D.C. 398, 846 F.2d 1384, 1418 (D.C. Cir. 1988)  and stated: "We rejected the theory [that the statements are discoverable], on the ground that Rule 16(a)(1)(A) could not be read to permit such discovery, implicitly because it would violate the balance chosen by Congress between the defendant's interest in use of non-witness materials and the government's interest in their non-disclosure." Williams at 90 F. 3d 512-513. Both Williams and Tarantino also raise the specter of possible witness intimidation as a basis for non-disclosure, which, I submit, is not a factor in our case.

The rationale in the Watkins case, *supra,* behind the denial of the discovery of 3500 material is, basically, "life is unfair." They hold that since the Jencks Act is limited to witnesses who actually testify, that the broad impeachment right granted by the enactment of Rule 806 does not embrace a broadening of the grant of discovery made by the Jencks Act. The court stated:

> We are confronted, however, with the unequivocal requirement in Rule 26.2 (a) that if a declarant's prior statement is to be provided to the defense, that declarant must have testified as a witness on direct examination. The Jencks Act represents a compromise between the defendant's need for a witness' prior statements for impeachment purposes and the interests of the government [citing Williams]. ...
>
> Watkins contends that a rule requiring the prosecution to provide the defense with prior statements of hearsay declarants whose declarations have been admitted under an exception to the hearsay rule, as well as the prior statements of declarants who have testified, would be more reasonable and more fair than a rule which treats the two situations differently. His point arguably is not without logical appeal. But as we stated in 1137 19th St. Assocs. v. District of Columbia, 769 A.2d 155 (D.C. 2001), we cannot rewrite the statute to make it more "reasonable." Cf. Iselin v. United States, 270 U.S. 245, 250-51, 70 L. Ed. 566, 46 S. Ct. 248, 62 Ct. Cl. 755 (1926) (Brandeis, J.) ("To supply omissions [in statutory language] transcends the judicial function."). Watkins at 846 A.2d 299.

Point I: Rule 806 was passed after the Jencks Act, and therefore modifies it:

I submit that these rationalizations are contradicted by two factors not considered by these courts. The first is the timing of the passage of the Jencks Act (1957) versus the timing of the adoption of the Federal Rules of Evidence (1975). Congress enacted 18 U.S.C. § 3500 on Sept. 2, 1957 (P.L. 85-269)  in response to the Supreme Court's ruling, Jencks v. United States, 353 U.S. 657 (1957), which held that criminal defendants may inspect government witnesses' prior

statements. The Federal Rules of Evidence were enacted effective July 1, 1975. Pub.L. No. 93-595, 88 Stat. 1926-1949, pursuant to the Federal Rules Enabling Act, 28 U.S.C. § 2072.

Thus, we argue that the newer Rule 806 trumps (amends) the Jencks Act insofar as there is an inconsistency. Although I cannot find any legislative history or commentator's notes dealing with the issue, it seems logical that if Congress felt that it should grant, through Rule 806, an impeachment device, then by passing Rule 806 it also intended the procedural tools for applying effective impeachment (just as broad as if the declarant had been called as a witness) should also be extended.

By analogy I note the following: in one of the Commentaries to Rule 806 the commentator state:

> "Rule 806 provides that a hearsay declarant may be impeached with an inconsistent statement. By definition, that impeachment would occur even though the declarant never has an opportunity to explain or deny the statement. It obviously makes no sense to impose a prior foundation requirement for statements of hearsay declarants. Thus, Rule 613 is inapplicable to the use of inconsistent statements to impeach a hearsay declarant." *Commentary*, Stephen A. Saltzburg, Daniel J Capra, and Michael M. Martin.

The analogy is that if Rule 613 becomes inapplicable because it is impossible to apply when the declarant is not called as a witness, then the discovery rule (providing impeachment material) should likewise apply as a result of the adoption by Congress of Rule 806.

Point 2: the Supreme Court's decision in Crawford v. Washington places special emphasis on the right of meaningful confrontation:

In the Watkins case the court noted:

> In Crawford v. Washington, 158 L. Ed. 2d 177, 541 U.S. [36], 124 S. Ct. 1354 (2004), decided while this appeal was pending, the Supreme Court clarified the scope of a criminal defendant's right under the Sixth Amendment to confront and cross-examine witnesses against him (or her) and reemphasized the significance of that right. The Crawford decision does not, however, address the prosecution's disclosure obligations under Jencks, and we conclude that it does not affect the appropriate disposition of this appeal.

While it may be true that Crawford did not address the exact issue raised here, the right to meaningful confrontation, through cross-examination, is of constitutional dimension beyond the

mere applicability of rules. In Crawford, declarations which under the Federal Rules of Evidence are admissible as statements against penal interest, may not be admissible as a matter of the Confrontation Clause because the right to confront and cross-examine witnesses is a broader right, granted in criminal cases to a defendant by the Constitution, than the traditional rules of evidence may provide. See majority decision at 541 U.S. 62:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." ... It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined. [citing Blackstone]. ...
>
> [continuing, at 541 U.S. 65:] To add insult to injury, some of the courts that admit untested testimonial statements find reliability in the very factors that *make* the statements testimonial. As noted earlier, one court relied on the fact that the witness's statement was made to police while in custody on pending charges--the theory being that this made the statement more clearly against penal interest and thus more reliable. ...
>
> [concluding, at 541 U.S. 69:] Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.

I understand that the issue of whether a co-conspirator statement is testimonial might be debatable. Crawford itself left "for another day" the discussion of what kind of statements are testimonial. Nevertheless the emphasis on the importance of cross-examination over the exceptions sometimes found in the rules of evidence and procedure suggests a new focus on the right to meaningful cross-examination suggest that the ability to impeach under Rule 806 should carry with it a commensurate ability to obtain the tools necessary to do a meaningful cross-examination.

Point 3: the Brady/Giglio obligation should extend to providing the full statements which are contradictory:

There is no question that the Jackson case and other cited in this discussion require the government to provide Brady/Giglio material to the defense with respect to the declarants who have made statements which the government knows are contradictory (and therefore can be used

for impeachment under Rule 806) to those being offered at trial. This should also extend to statements the government has which are contradictory to each other as well.

We are requesting that, at the very least, the government provide the full report of any and all statements of co-conspirators (or any other declarant whose out-of-court statements will be offered) which contradict the declarations being offered and which contradict each other. This is a more limited demand than for all of the 3500 material, but in this case, based on the disclosure already made, the contradictory statements appear to be in reports or notes which normally would be part of any 3500 submission. Merely being on notice that a contradictory statement was made is not sufficient to allow the defense to make full use of Rule 806. Once again, under Williams there should be no issue:

> Finally, we note that our hewing to the standard meaning of § 3500 by no means leaves the defendant bereft of means for discovering a declarant's statements to the government. If a declarant contradicted himself on a key point, then Brady v. Maryland, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), would likely require disclosure.

Disclosure of what is not announced in the decision. The notice requirement of "favorable" or "exculpatory" evidence may be satisfied in some instances by a mere statement that a witness the government interviewed provided an exculpating statement or one which contradicts the government's position. But where hearsay or co-conspirator statements are being offered by the government for their truth, the Rule 806 right to impeach the declarant – who may be unavailable – demands a stricter interpretation of what the government must provide.

In order to meaningfully exercise a defendant's right under Rule 806 to impeach a declarant whose statements are offered by the government the defense should have the complete text and context of any and all prior inconsistent statements. There is no obligation on the defense to call the declarant as a defense witness in order to impeach the declarant under Rule 806: this is clear from the discussions in the Second Circuit's decision in the Traska case discussed above. The government should be required to provide the full report and entire text of any memorialization of any contradicting statement which they have in their possession.

Thank you.

Sincerely,

/s/ *Thomas H. Nooter*
Thomas H. Nooter
Attorney for Defendant

cc:    AUSA Danya Perry and Dan Levy, by ECF
       All counsel by ECF