UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA                      :
                                              :
              - v. -                          :     SEALED
                                              :     SUPERSEDING INDICTMENT
DOUGLAS SHYNE,                                :
NATASHA SINGH,                                :     S4 05 Cr. 1067 (KMK)
   a/k/a "Beatris Rodrigues,"                 :
NATHANIEL SHYNE,                              :
TOYBE BENNETT,                                :
   a/k/a "Dmitriy Makarevich,"               :
   a/k/a "Dmitriy Makervish,"                :
   a/k/a "Eduardo Rodrigues,"                :
   a/k/a "Cecilio Pena,"                     :
ROBERTO MONTGOMERY,                           :
EPHRAIM RICHARDSON,                           :
NARESH PITAMBAR,                              :
JASON WATLER,
STEVEN RIDDICK,
NATHANIEL ALEXANDER, and
TIMOTHY MONTGOMERY,

              Defendants.
- - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: APR 2 6 2006

COUNT ONE

(Bank Fraud Conspiracy)

The Grand Jury charges:

Relevant Persons and Entities

    1.   At times relevant to this Indictment, DOUGLAS SHYNE and
NATASHA SINGH, the defendants, resided together as common-law
husband and wife, and jointly owned at least two businesses,
Douglas New York Five Star Coffee, and New York Café Lounge.

    2.   Douglas New York Five Star Coffee, a shell corporation
used to launder the proceeds of the conspirators' fraudulent
activity, maintained a business address of 244 Fifth Avenue in

New York, New York and a bank account at the Bank of America
(formerly Fleet) (the "Douglas Account"), among other banks.  New
York Café Lounge, which also was used to launder the proceeds of
the conspirators' fraudulent activity, was run as a nightclub in
Philadelphia, Pennsylvania, and maintained a business account at
Commerce Bank (the "Café Lounge Account"), among other banks.

    3.    DOUGLAS SHYNE and NATASHA SINGH have the following
connections, among others, to their co-conspirators:

        a.    Christine Richardson is NATASHA SINGH's mother.

        b.    EPHRAIM RICHARDSON is NATASHA SINGH's brother.

        c.    NATHANIEL SHYNE is DOUGLAS SHYNE's brother.

        d.    TOYBE BENNETT is a personal friend of DOUGLAS
SHYNE and NATASHA SINGH.

        e.    ROBERTO MONTGOMERY is TOYBE BENNETT's cousin.

        f.    JASON WATLER is a friend of TOYBE BENNETT.

        g.    NARESH PITAMBAR is related by marriage to
Christine Richardson.

        h.    TIMOTHY MONTGOMERY, a former Olympic gold medalist
and world record holding sprinter, is an acquaintance of a co-
conspirator not named as a defendant herein ("CC-1"), who is a
friend of DOUGLAS SHYNE.

        i.    STEVEN RIDDICK is a former Olympic gold medalist
and TIMOTHY MONTGOMERY's track coach.

        j.    NATHANIEL ALEXANDER is a friend of, and shares

office space in Norfolk, Virginia with, STEVEN RIDDICK.

<u>The Fraudulent Checks Scheme</u>

4.   At all times relevant to this Indictment, DOUGLAS SHYNE and NATASHA SINGH were in the business of procuring fraudulent checks in at least the following ways:  First, DOUGLAS SHYNE, NATASHA SINGH, and their co-conspirators received stolen checks and arranged for such checks to be cashed.  Second, DOUGLAS SHYNE, NATASHA SINGH, and their co-conspirators altered checks that they had legitimately received, either made out to them personally or to their businesses, by listing a different payee's name and a different payment amount, and then arranged for such altered checks to be deposited into an account bearing the new payee's name.  Third, DOUGLAS SHYNE, NATASHA SINGH, and their co-conspirators received copies of checks that had been processed by associates employed at certain banks, including Wachovia Bank, and used those check copies to create counterfeit checks, retaining the bank account information and signature on the check copies, but altering the payee's name, payment amount, and/or check number, and then arranged for such counterfeit checks to be deposited into an account bearing the new payee's name.

5.   DOUGLAS SHYNE and NATASHA SINGH arranged for the fraudulently obtained checks to be cashed in at least the following ways:  First, DOUGLAS SHYNE and NATASHA SINGH deposited fraudulently obtained checks into their business bank accounts or into NATASHA SINGH's personal bank accounts.  Second, DOUGLAS

3

SHYNE and NATASHA SINGH and their co-conspirators unlawfully obtained the identification information of other individuals, without the consent or authorization of those individuals, used that information to open accounts at various banks, and then deposited fraudulently obtained checks into such accounts. Third, DOUGLAS SHYNE and NATASHA SINGH arranged for fraudulently obtained checks to be deposited into the bank accounts of their friends, relatives, and associates, who would then, in turn, funnel proceeds of such checks back to DOUGLAS SHYNE and NATASHA SINGH, minus a commission.

6.    From at least in or about December 2002 through in or about August 2005, DOUGLAS SHYNE, NATASHA SINGH, and their co-conspirators stole, altered and/or counterfeited at least approximately twenty checks, in the total aggregate amount of well over approximately five million dollars.

7.    In the scheme set forth herein, CC-1 served as a broker between DOUGLAS SHYNE, NATASHA SINGH, and TOYBE BENNETT in the New York area, on the one hand, and TIMOTHY MONTGOMERY, STEVEN RIDDICK, and NATHANIEL ALEXANDER in the Norfolk, Virginia area, on the other.  Thus, in or about March 2005, DOUGLAS SHYNE and CC-1 agreed that CC-1 would seek individuals willing to deposit fraudulently obtained checks into their accounts, and subsequently, through his acquaintance with TIMOTHY MONTGOMERY, CC-1 in fact arranged with each of TIMOTHY MONTGOMERY, STEVEN RIDDICK and NATHANIEL ALEXANDER to deposit such checks into their

4

accounts.

The Victim-1 Account and the $112,834 Stolen and Altered Check

8.    Prior to in or about September 2003, the conspirators stole the identification information of an individual ("Victim-1") and, on or about September 15, 2003, DOUGLAS SHYNE and NATASHA SINGH used Victim-1's identification information to open a bank account at Commerce Bank, using a Philadelphia address associated with a co-conspirator not named as a defendant herein ("CC-2") (the "Victim-1 Account").

9.    On or about September 23, 2003, the conspirators deposited into the Victim-1 Account a check in the amount of approximately $3,000, drawn on a Commerce Bank account that TOYBE BENNETT had fraudulently opened using stolen identification information and a Philadelphia address associated with CC-2.

10.    In or about September 2003 or early October 2003, a check in the amount of approximately $112,834, drawn on a JPMorgan Chase bank account, was stolen from a university in New York, New York, and the payee's name was altered to reflect Victim-1's name (the "Stolen $112,834 Check").

11.    On or about October 3, 2003, DOUGLAS SHYNE and NATASHA SINGH deposited the Stolen $112,834 Check into the Victim-1 Account.

12.    From in or about September 2003 through in or about January 2004, the conspirators issued at least approximately five checks from the Victim-1 Account in the total aggregate amount of

over approximately $99,000, including at least approximately one check in the amount of approximately $2,500, which was deposited into the Douglas Account.

13.  On a number of occasions in or about October 2003, in the Bronx, New York, the conspirators withdrew funds by automated teller machines from the Victim-1 Account.

<u>The Stolen $775,000 Check</u>

14.  In or about March 2004, a check in the amount of approximately $775,000, drawn on a Wachovia Bank account, was stolen in New York, New York (the "Stolen $775,000 Check").

15.  On or about March 12, 2004, TOYBE BENNETT deposited the Stolen $775,000 Check into a Morgan Stanley investment account at Wachovia Bank, using a victim's stolen identification information (the "Morgan Stanley Account").

16.  From on or about April 16, 2004 through on or about August 18, 2004, the conspirators issued at least approximately twenty-one checks, drawn on the Morgan Stanley Account, in the total aggregate amount of at least approximately $758,327. Certain of these checks were used to purchase high-end vehicles, art, and jewelry; other checks were made out to various individuals, including to Christine Richardson and an individual who is both a sister of ROBERTO MONTGOMERY and a cousin of TOYBE BENNETT ("CC-3").  In turn, Christine Richardson and CC-3 kept commissions for themselves, and issued checks to Douglas NY Five Star Coffee, which were deposited into the Douglas Account.

6

17.   Between on or about July 26, 2004, and on or about August 10, 2004, Christine Richardson deposited into her own Citibank account approximately four checks drawn on the Morgan Stanley Account, in the total aggregate amount of approximately $200,000.  In addition, between on or about July 28, 2004, and on or about August 16, 2004, NATASHA SINGH deposited into the Douglas Account approximately four checks drawn on Christine Richardson's Citibank account, in the total aggregate amount of approximately $180,000.

18.   Between on or about July 26, 2004, and on or about August 10, 2004, Christine Richardson deposited into her own Citibank account approximately four checks drawn on the Morgan Stanley Account, in the total aggregate amount of approximately $200,000.  In addition, between on or about July 28, 2004, and on or about August 16, 2004, NATASHA SINGH deposited into the Douglas Account approximately four checks drawn on Christine Richardson's Citibank account, in the total aggregate amount of approximately $180,000.

<u>The Victim-2 Account</u>

19.   In or about 2003, NATASHA SINGH stole the identification information of an individual who had been a client of NATASHA SINGH's when NATASHA SINGH worked as an insurance company representative ("Victim-2").

20.   In or about February 2004, the conspirators opened an account at Union Federal Bank in the name of Victim-2, using a

Manhattan address (the "Victim-2 Account"), with a fraudulent wire transfer from MBNA America in the amount of approximately $20,000.

21.   On or about April 3, 2004, the conspirators deposited a check drawn on the Morgan Stanley Account, in the amount of approximately $250,000, into the Victim-2 Account.

22.   From in or about March 2004 through in or about April 2004, the conspirators withdrew funds from the Victim-2 Account in New York, New York, among other places.

<u>The Victim-3 Account</u>

23.   In or about 2003, NATASHA SINGH stole the identification information of a resident of Puerto Rico ("Victim-3").

24.   In or about April 2004, NATASHA SINGH applied for an unsecured loan and opened a bank account with First National Bank in Omaha, Nebraska, using the stolen identification information of Victim-3 (the "Victim-3 Account").

25.   From in or about April 2004 through in or about September 2004, NATASHA SINGH used credit cards and checks drawn on the Victim-3 Account to pay for merchandise, women's clothing and shoes, electronic equipment and her own utility bills, as well as to issue, on or about April 30, 2004, at least approximately one check to the Douglas Account, in the amount of approximately $8,500, and to issue, on or about September 6, 2004, at least approximately two checks to the Morgan Stanley

8

Account, in the amounts of approximately $85,000 and $92,000.

<u>The $150,000 Fleet Counterfeit Check</u>

26.   On or about October 25, 2004, NATASHA SINGH deposited into the Douglas Account a counterfeit check in the amount of approximately $150,000, drawn on a victim's bank account at Bank of America (formerly Fleet) (the "$150,000 Fleet Counterfeit Check").

27.   In the approximately two-week period following NATASHA SINGH's deposit of the $150,000 Fleet Counterfeit Check into the Douglas Account, NATASHA SINGH largely depleted the Douglas Account, by, among other payments and withdrawals, writing approximately eight checks to herself, in the total aggregate amount of approximately $115,000.

<u>The $85,210 Counterfeit Check</u>

28.   On or about February 3, 2005, CC-2 deposited a counterfeit check in the amount of approximately $85,210 (the "$85,210 Counterfeit Check") into CC-2's account at Wachovia Bank (the "CC-3 Account").

29.   On or about February 4, 2005, CC-2 wrote several checks drawn on the CC-2 Account, including at least approximately one check to EPHRAIM RICHARDSON, in the amount of approximately $4,000; at least approximately two checks to NATASHA SINGH, in the total aggregate amount of approximately $8,800, which NATASHA SINGH deposited into her Commerce Bank account; and at least approximately one check to CC-2, in the amount of approximately

9

$5,500.

30.  Beginning on or about February 3, 2005, the conspirators withdrew funds and made purchases off the CC-2 Account, until on or about February 9, 2005, at which time the $85,210 Counterfeit Check was returned as counterfeit, and no more proceeds were available to the conspirators.

<u>The Three Counterfeit Checks Totaling $905,000</u>

31.  From in or about March 2005 through in or about May 2005, DOUGLAS SHYNE, TOYBE BENNETT, STEVEN RIDDICK, TIMOTHY MONTGOMERY, and CC-1 agreed to transport from New York to Virginia at least approximately three counterfeit checks in the total aggregate amount of approximately $905,000, in order to deposit such checks into STEVEN RIDDICK's bank accounts and to then split the proceeds of such checks.

32.  In or about March 2005, the conspirators created a counterfeit check from a copy of an original check issued by two victims to a third individual, in the amount of approximately $120, which check had been copied at a Wachovia Bank branch, by altering the name of the payee to "Steve Riddick;" the payment amount from approximately $120 to approximately $80,000; and the check number from 2992 to 3005 (the "80,000 Counterfeit Check").

33.  On or about April 1, 2005, STEVEN RIDDICK caused the $80,000 Counterfeit Check to be deposited into his personal bank account at Navy Federal Credit Union (the "Riddick Credit Union Account").

34.   On or about April 5, 2005, STEVEN RIDDICK sent a Federal Express package to TOYBE BENNETT, containing checks drawn on the Riddick Credit Union Account to be distributed amongst DOUGLAS SHYNE's designees in the New York area; however, the $80,000 Counterfeit Check failed to clear, and thus no proceeds were available to the conspirators.

35.   In or about late 2004 or in or about early 2005, the conspirators altered a check for approximately $55 that NATASHA SINGH had received from a title company, drawn on a Wachovia Bank account, by changing the name of the payee from "Natasha Singh" to "Steve Riddick Sports Training Inc.," and the payment amount from approximately $55 to approximately $375,000 (the "$375,000 Riddick Counterfeit Check").

36.   On or about April 5, 2005, DOUGLAS SHYNE sent the $375,000 Riddick Counterfeit Check by Federal Express from New York, New York, to CC-1 in Virginia Beach, Virginia, in order for CC-1 to transfer the $375,000 Riddick Counterfeit Check to STEVEN RIDDICK for deposit.

37.   On or about April 6, 2005, STEVEN RIDDICK instructed an employee of NATHANIEL ALEXANDER's business ("CC-4") to deposit the $375,000 Riddick Counterfeit Check into the bank account for STEVEN RIDDICK's business, Steve Riddick Sports Training, Inc., at RBC Centura Bank (the "Riddick Account").

38.   On or about April 6, 2005, STEVEN RIDDICK signed at least approximately five checks drawn on the Riddick Account and

sent or caused to be sent a Federal Express package from the office space he shared with NATHANIEL ALEXANDER to TOYBE BENNETT, containing such signed checks to be distributed amongst DOUGLAS SHYNE and NATASHA SINGH's designees in the New York area. DOUGLAS SHYNE and NATASHA SINGH then distributed the Riddick Account checks to their designees, who then in turn funneled the proceeds of such checks back to DOUGLAS SHYNE and NATASHA SINGH.

39.  On or about April 20, 2005, Christine Richardson deposited into her Bank of America account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the amount of approximately $50,000.  In turn, on or about April 25, 2005, Christine Richardson issued a check drawn on her Bank of America account to a leasing company for a Maserati used by DOUGLAS SHYNE and NATASHA SINGH, in the amount of approximately $40,000.

40.  On or about April 21, 2005, NARESH PITAMBAR deposited into his business's Citibank account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the amount of approximately $20,000.  In turn, on or about May 3, 2005, NARESH PITAMBAR issued a check drawn on his Citibank account to the construction company building a fence for the residence owned by DOUGLAS SHYNE and NATASHA SINGH, in the amount of approximately $10,000.

41.  On or about April 20, 2005, EPHRAIM RICHARDSON deposited into his JPMorgan Chase bank account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the

amount of approximately $10,000.  In turn, on or about April 29,
2005, EPHRAIM RICHARDSON issued a check drawn on his JPMorgan
Chase bank account to NATASHA SINGH, in the amount of
approximately $8,500, which NATASHA SINGH deposited into her
Commerce Bank account.

42.  On or about April 21, 2005, JASON WATLER deposited into
his Citibank account a check drawn on the Riddick Account, dated
on or about April 6, 2005, in the amount of approximately
$80,000.  In turn, on or about April 25, 2005, JASON WATLER
issued a check drawn on his Citibank account to NATASHA SINGH, in
the amount of approximately $72,400, which NATASHA SINGH
deposited into her Commerce Bank account.

43.  On or about April 26, 2005, ROBERTO MONTGOMERY
deposited into his JPMorgan Chase bank account a check drawn on
the Riddick Account, dated on or about April 6, 2005, in the
amount of approximately $18,000.  In turn, on or about April 27,
2005, ROBERTO MONTGOMERY issued a check drawn on his JPMorgan
Chase account to New York Café Lounge, in the amount of
approximately $13,000.

44.  STEVEN RIDDICK also made payments to TIMOTHY MONTGOMERY
and CC-1 for their roles in brokering the $375,000 Counterfeit
Riddick Check transaction.  On or about April 6 and April 7,
2006, STEVEN RIDDICK issued at least approximately four checks
drawn on the Riddick Account to associates of CC-1, in the total
aggregate amount of approximately $34,000.  On or about April 20,

2005, STEVEN RIDDICK issued a check drawn on the Riddick Account to TIMOTHY MONTGOMERY, in the amount of approximately $20,000, which TIMOTHY MONTGOMERY deposited into his Wachovia Bank account on or about April 20, 2005.  In addition, on or about April 20, 2005, STEVEN RIDDICK also issued a check drawn on the Riddick Account to CC-4, in the amount of approximately $2,000.

45.  On or about May 9, 2005, DOUGLAS SHYNE sent a counterfeit check in the amount of approximately $450,000, drawn on a Wachovia Bank account (the "$450,000 Counterfeit Check") by Federal Express, to CC-1 in order for CC-1 to transfer the check to STEVEN RIDDICK for deposit.

46.  On or about May 10, 2005, STEVEN RIDDICK caused the $450,000 Counterfeit Check to be deposited into the Riddick Account; however, the $450,000 Counterfeit Check failed to clear, and thus no proceeds were available to the conspirators.

## The Two Counterfeit Checks Totaling $1 Million

47.  From in or about March 2005 through in or about May 2005, DOUGLAS SHYNE, STEVEN RIDDICK, NATHANIEL ALEXANDER, TIMOTHY MONTGOMERY, and CC-1 agreed to transport from New York to Virginia at least approximately two counterfeit checks in the total aggregate amount of approximately $1,000,000, in order to deposit such checks into NATHANIEL ALEXANDER's bank accounts and to then split the proceeds of such checks.

48.  In or about April 2005, the conspirators altered a check that DOUGLAS SHYNE and NATASHA SINGH had received from

14

American Express.  That check, in the amount of approximately $31.40, was drawn on a Wachovia Bank account, and was made out to New York Café Lounge.  The conspirators altered that check by changing the name of the payee from "New York Café Lounge Inc." to "B&T Petroleum," and the payment amount from approximately $31.40 to approximately $850,000 (the "$850,000 Counterfeit Check").

49.  On or about April 26, 2005, NATHANIEL ALEXANDER deposited the $850,000 Counterfeit Check into a new bank account for his business, B&T Petroleum, that he opened at SunTrust Bank for the purpose of depositing the $850,000 Counterfeit Check (the "B&T Account").  Although the $850,000 Counterfeit Check initially cleared, the credit was reversed on or about May 3, 2005, when the $850,000 Counterfeit Check was discovered to be counterfeit, and thus ultimately no proceeds were available to the conspirators.

50.  On or about April 27, 2005, NATHANIEL ALEXANDER signed at least approximately two starter checks drawn on the B&T Account and transferred such checks to CC-1.

51.  On or about April 27, 2005, CC-1 sent a Federal Express package to DOUGLAS SHYNE, containing checks drawn on the B&T Account to be distributed amongst DOUGLAS SHYNE and NATASHA SINGH's designees in the New York area.

52.  On or about May 3, 2005, EPHRAIM RICHARDSON deposited into his JPMorgan Chase bank account a check drawn on the B&T

15

Account, dated on or about April 27, 2005, in the amount of approximately $25,000.

53.  On or about May 3, 2005, in New York, New York, JASON WATLER deposited into his Citibank account a check drawn on the B&T Account, dated on or about April 27, 2005, in the amount of approximately $60,000.

54.  On or about May 3, 2005, a close relative of STEVEN RIDDICK deposited into her Navy Federal Credit Union bank account a check drawn on the B&T Account, dated on or about April 29, 2005, in the amount of approximately $25,000.

55.  On or about May 4, 2005, a close associate of TIMOTHY MONTGOMERY deposited into her Wachovia Bank account a check drawn on the B&T Account, dated on or about April 29, 2005, in the amount of approximately $25,000.

56.  On or about May 9, 2005, DOUGLAS SHYNE sent a counterfeit check in the amount of approximately $150,000, drawn on a Wachovia Bank account (the "$150,000 Wachovia Counterfeit Check"), by Federal Express, to CC-1 in order for CC-1 to transfer the check to NATHANIEL ALEXANDER for deposit.

57.  On or about May 10, 2005, NATHANIEL ALEXANDER deposited the $150,000 Wachovia Counterfeit Check into his personal bank account at BB&T Bank; however, the $150,000 Wachovia Counterfeit Check failed to clear, and thus no proceeds were available to the conspirators.

## The Two Counterfeit Checks Totaling $775,000

58.    From in or about March 2005 through in or about May 2005, DOUGLAS SHYNE, TOYBE BENNETT, TIMOTHY MONTGOMERY, and CC-1 agreed to transport from New York to Virginia and Texas at least approximately two counterfeit checks in the total aggregate amount of approximately $775,000, in order to deposit such checks into accounts associated with TIMOTHY MONTGOMERY and to then split the proceeds of such checks.

59.    In or about April 2005, the conspirators altered a check that DOUGLAS SHYNE and NATASHA SINGH had received from American Express.  That check, in the amount of approximately $7.12, was drawn on a Wachovia Bank account, and was made out to New York Café Lounge.  The conspirators altered that check by changing the name of the payee from "New York Café Lounge Inc." to "Vector Sports" (the company name of TIMOTHY MONTGOMERY's sports agent, located in Keller, Texas), and the payment amount from approximately $7.12 to approximately $575,000 (the "$575,000 Counterfeit Check").

60.    On or about April 26, 2005, Vector Sports Management caused the $575,000 Counterfeit Check to be deposited into its business bank account at Wells Fargo Bank; however, the $575,000 Counterfeit Check failed to clear, and thus no proceeds were available to the conspirators.

61.    In or about April 2005, the conspirators created a counterfeit check from a copy of a check for approximately

$58,000 that DOUGLAS SHYNE and NATASHA SINGH had received from an automobile dealership.  That original check, in the amount of approximately $58,000, was drawn on a Community Bank of Broward (Florida) account, and was made out to New York Café Lounge.  In creating the counterfeit check, the conspirators changed the name of the payee from "NY Café Lounge" to "TM & Associates," a business account held by TIMOTHY MONTGOMERY; the payment amount from approximately $58,000 to approximately $200,000; and the check number from 1974 to 2274 (the "$200,000 Counterfeit Check").

62.  On or about May 26, 2005, TIMOTHY MONTGOMERY deposited the $200,000 Counterfeit Check into the business bank account for TM & Associates, Inc. c/o Timothy Montgomery, at Wachovia Bank; however, the $200,000 Counterfeit Check failed to clear, and thus no proceeds were available to the conspirators.

<u>The $175,000 Counterfeit Check</u>

63.  In or about June 2005, the conspirators altered a check that DOUGLAS SHYNE and NATASHA SINGH had received from American Express.  That check, in the amount of approximately $5.62, was drawn on a Wachovia Bank account, and was made out to New York Café Lounge.  The conspirators altered that check by changing the name of the payee from "New York Café Lounge Inc." to "Cristine Richardson" and the payment amount from approximately $5.62 to approximately $175,000 (the "$175,000 Counterfeit Check").

64.  On or about July 5, 2005, Christine Richardson caused

the $175,000 Counterfeit Check to be deposited into her Bank of America account; however, the $175,000 Counterfeit Check failed to clear, and thus no proceeds were available to the conspirators.

The Victim-4 Account and the $228,997 Counterfeit Check

65.   In or about May 2005, the conspirators opened an account at Union Federal Bank in the name of an individual whose identification information they had stolen ("Victim-4"), using TOYBE BENNETT's address (the "Victim-4 Account").

66.   On or about June 2, 2005, the conspirators deposited into the Victim-4 Account a counterfeit check in the amount of approximately $228,997.

67.   From in or about May 2005 through in or about June 2005, the conspirators used a debit card associated with the Victim-4 Account in New York, New York, among other places.

The $375,000 Auto Group Counterfeit Check

68.   In or about May 2005, the conspirators altered a check that DOUGLAS SHYNE and NATASHA SINGH had received from a local college.  That check, in the amount of approximately $99, was drawn on a Bank of America account, and was made out to a close relative of NATASHA SINGH.  The conspirators altered that check by changing the name of the payee from the name of NATASHA SINGH's relative to "Auto Group Carriers & RVs" and the payment amount from approximately $99 to approximately $375,000 (the "$375,000 Auto Group Counterfeit Check").

69.   On or about July 22, 2005, a co-conspirator not named as a defendant herein ("CC-5") caused the $375,000 Auto Group Counterfeit Check to be deposited into CC-5's account at Commerce Bank; however, the $375,000 Counterfeit Check failed to clear, and thus no proceeds were available to the conspirators.

The $180,000 Counterfeit Check

70.   On or about June 8, 2005, NATASHA SINGH deposited a counterfeit check in the amount of approximately $180,000, drawn on an account at Wachovia Bank, into the Commerce Bank account of NATHANIEL SHYNE, located in New York, New York.

71.   On or about June 9, 2005, NATHANIEL SHYNE issued approximately two checks drawn on his Commerce Bank account to Christine Richardson in the total aggregate amount of approximately $135,000, which Christine Richardson deposited into her bank accounts at Bank of America and Astoria Federal Savings.

The Victim-5 Account and the $75,000 Counterfeit Check

72.   Prior to in or about 2004, in Orange County, New York, the conspirators stole the identification information of a resident of Newburgh, New York ("Victim-5").

73.   From at least in or about 2004, the conspirators used Victim-5's identification information to purchase and to attempt to purchase merchandise, including computers, women's clothing, children's clothing and toys, in Orange County and New York, New York, among other places.

74.   In or about June 2005, the conspirators opened an

account at Union Federal Bank in Victim-5's name, using a
Philadelphia address associated with CC-2 (the "Victim-5
Account").

75.  On or about June 24, 2005, the conspirators deposited a
counterfeit check in the amount of approximately $75,000, drawn
on a Bank of America account, into the Citizen's Bank account of
a co-conspirator not named as a defendant herein (the "CC-6
Account").

76.  On or about June 24, 2005, the conspirators deposited
into the Victim-5 Account a check for approximately $6,000, drawn
on the CC-6 Account.

77.  On or about June 27, 2005, Christine Richardson caused
to be deposited into her Bank of America account a check drawn on
the CC-6 Account in the amount of approximately $49,000.

78.  Between on or about June 26, 2005 and on or about June
27, 2005, Christine Richardson issued approximately two checks
drawn on her Bank of America account to NATASHA SINGH, in the
amounts of approximately $8,200 and $9,100.

79.  Between on or about June 27, 2005 and on or about June
28, 2005, Christine Richardson issued approximately three checks
drawn on her Bank of America account to EPHRAIM RICHARDSON, in
the amounts of approximately $2,500, $4,300, and $4,700.

80.  Between on or about June 27, 2005 and on or about June
28, 2005, Christine Richardson issued approximately three checks
to cash, in the amounts of approximately $8,500, $8,000, and

$7,350.

### The Two Counterfeit Checks Totaling $150,000

81.   On or about July 25, 2005, a co-conspirator not named as a defendant herein ("CC-7") deposited into CC-7's Bank of America account (the "CC-7 Account") approximately two counterfeit checks in the total aggregate amount of approximately $150,000, drawn on accounts at Bank of America.

82.   On or about August 1, 2005, approximately three checks, drawn on the CC-7 Account and made out to cash, in the total aggregate amount of approximately $73,500, were deposited into the Café Lounge Account.  In turn, on or about August 3, 2005, NATASHA SINGH issued at least approximately three checks to herself, in the total aggregate amount of approximately $59,500, drawn on the Café Lounge Account.

83.   In or about late July 2005 and early August 2005, CC-7 issued approximately six checks drawn on the CC-7 Account to NATHANIEL SHYNE, in the total aggregate amount of approximately $21,850, which were deposited into NATHANIEL SHYNE's Commerce Bank account, located in New York, New York.

### Statutory Allegations

84.   From at least in or about December 2002 through in or about August 2005, in the Southern District of New York and elsewhere, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," NATHANIEL SHYNE, TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo

Rodrigues," a/k/a "Cecilio Pena," ROBERTO MONTGOMERY, EPHRAIM
RICHARDSON, NARESH PITAMBAR, JASON WATLER, STEVEN RIDDICK,
NATHANIEL ALEXANDER, and TIMOTHY MONTGOMERY, the defendants,
together with others known and unknown, unlawfully, willfully,
and knowingly did combine, conspire, confederate, and agree
together and with each other to commit an offense against the
United States, to wit, to violate Title 18, United States Code,
Section 1344.

85.  It was a part and an object of the conspiracy that
DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues,"
NATHANIEL SHYNE, TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a
"Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio
Pena," ROBERTO MONTGOMERY, EPHRAIM RICHARDSON, NARESH PITAMBAR,
JASON WATLER, STEVEN RIDDICK, NATHANIEL ALEXANDER, and TIMOTHY
MONTGOMERY, the defendants, together with others known and
unknown, unlawfully, willfully, and knowingly, would and did
execute, and attempt to execute, a scheme and artifice to defraud
financial institutions, the deposits of which were then insured
by the Federal Deposit Insurance Corporation, and to obtain
moneys, funds, credits, assets, securities, and other property
owned by, and under the custody and control of, said financial
institutions, by means of false and fraudulent pretenses,
representations, and promises, to wit, the defendants defrauded
Wachovia Bank, Bank of America, and Community Bank of Broward,
among other banks, by depositing stolen, altered and counterfeit

23

checks drawn on accounts at such banks, as well as proceeds from such checks, into accounts at numerous banks, in violation of Title 18, United States Code, Section 1344.

<u>OVERT ACTS</u>

86.     In furtherance of the conspiracy and to effect the illegal object thereof, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," NATHANIEL SHYNE, TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," ROBERTO MONTGOMERY, EPHRAIM RICHARDSON, NARESH PITAMBAR, JASON WATLER, STEVEN RIDDICK, NATHANIEL ALEXANDER, and TIMOTHY MONTGOMERY, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.     On or about April 5, 2005, DOUGLAS SHYNE sent the $375,000 Riddick Counterfeit Check by Federal Express from New York, New York, to CC-1 in Virginia Beach, Virginia.

b.     On or about April 6, 2005, STEVEN RIDDICK signed at least approximately five checks drawn on the Riddick Account.

c.     On or about April 20, 2005, TIMOTHY MONTGOMERY deposited into his Wachovia Bank account a check drawn on the Riddick Account, dated on or about April 20, 2005, in the amount of approximately $20,000.

d.     On or about April 21, 2005, NARESH PITAMBAR deposited into his business's Citibank account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the

24

amount of approximately $20,000.

e.    On or about April 20, 2005, EPHRAIM RICHARDSON deposited into his JPMorgan Chase bank account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the amount of approximately $10,000.

f.    On or about April 29, 2005, NATASHA SINGH deposited into her Commerce Bank account a check in the amount of approximately $8,500, drawn on EPHRAIM RICHARDSON's JP Morgan Chase bank account.

g.    On or about April 21, 2005, JASON WATLER deposited into his Citibank account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the amount of approximately $80,000.

h.    On or about April 25, 2005, NATASHA SINGH deposited into her Commerce Bank account a check in the amount of approximately $72,400, drawn on JASON WATLER's Citibank account.

i.    On or about April 26, 2005, ROBERTO MONTGOMERY deposited into his JPMorgan Chase bank account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the amount of approximately $18,000.

j.    On or about April 26, 2005, NATHANIEL ALEXANDER deposited the $850,000 Counterfeit Check into the B&T Account.

k.    On or about April 27, 2005, CC-1 sent a Federal Express package from Virginia Beach, Virginia to DOUGLAS SHYNE, containing checks drawn on the B&T Account.

l.    On or about May 3, 2005, EPHRAIM RICHARDSON deposited into his JPMorgan Chase bank account a check drawn on the B&T Account, dated on or about April 27, 2005, in the amount of approximately $25,000.

m.    On or about May 3, 2005, in New York, New York, JASON WATLER deposited into his Citibank account a check drawn on the B&T Account, dated on or about April 27, 2005, in the amount of approximately $60,000.

n.    In or about late July and early August 2005, NATHANIEL SHYNE deposited into his Commerce Bank account, located in New York, New York, approximately six checks drawn on the CC-7 Account, in the total aggregate amount of approximately $21,850.

o.    On or about August 1, 2005, approximately three checks, drawn on the CC-7 Account and made out to cash, were deposited into the Café Lounge Account.

p.    On or about August 3, 2005, NATASHA SINGH issued at least approximately three checks to herself, in the total aggregate amount of approximately $59,500, drawn on the Café Lounge Account.

(Title 18, United States Code, Section 1349.)

<u>COUNTS TWO THROUGH TEN</u>

(Bank Fraud)

The Grand Jury further charges:

87.    The allegations set forth in paragraphs 1 through 83 are repeated and realleged as if set forth fully herein.

26

88.   On the approximate dates set forth below, in the Southern District of New York and elsewhere, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," NATHANIEL SHYNE, TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," ROBERTO MONTGOMERY, EPHRAIM RICHARDSON, NARESH PITAMBAR, JASON WATLER, STEVEN RIDDICK, NATHANIEL ALEXANDER, and TIMOTHY MONTGOMERY, the defendants, unlawfully, willfully, and knowingly, did execute and attempt to execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, said financial institutions, by means of false and fraudulent pretenses, representations, and promises, to wit, the defendants defrauded Wachovia Bank, Bank of America, and Community Bank of Broward, among other banks, by depositing stolen, altered and counterfeit checks drawn on accounts at such banks, as well as proceeds from such checks, into accounts at numerous banks, as set forth below.

| COUNT | Approx. Dates | Approx. Check Amount* | Bank** | Defendant(s)*** |
|-------|---------------|------------------------|--------|------------------|
| TWO | 3/04-8/04 | $775,000 stolen check | Wachovia Bank | DOUGLAS SHYNE, NATASHA SINGH, TOYBE BENNETT |
| THREE | 10/04-12/04 | $150,000 | Bank of America | NATASHA SINGH |
| FOUR | 12/04-5/05 | Three checks totaling $905,000 | Wachovia Bank | DOUGLAS SHYNE, NATASHA SINGH, TOYBE BENNETT, ROBERTO MONTGOMERY, EPHRAIM RICHARDSON, NARESH PITAMBAR, JASON WATLER, STEVEN RIDDICK, TIMOTHY MONTGOMERY |
| FIVE | 3/05-5/05 | Two checks totaling $1 million | Wachovia Bank | DOUGLAS SHYNE, NATASHA SINGH, EPHRAIM RICHARDSON, JASON WATLER, STEVEN RIDDICK, NATHANIEL ALEXANDER, TIMOTHY MONTGOMERY |
| SIX | 3/05-5/05 | Two checks totaling $775,000 | Wachovia Bank, Community Bank of Broward | DOUGLAS SHYNE, NATASHA SINGH, TOYBE BENNETT, TIMOTHY MONTGOMERY |
| SEVEN | 6/05-7/05 | $175,000 | Wachovia Bank | DOUGLAS SHYNE, NATASHA SINGH |
| EIGHT | 5/05-7/05 | $375,000 | Bank of America | DOUGLAS SHYNE, NATASHA SINGH |
| NINE | 6/05 | $180,000 | Wachovia Bank | DOUGLAS SHYNE, NATASHA SINGH, NATHANIEL SHYNE |
| TEN | 7/05-8/05 | Two checks totaling $150,000 | Bank of America | DOUGLAS SHYNE, NATASHA SINGH, NATHANIEL SHYNE |

(Title 18, United States Code, Sections 1344 and 2.)

---

*Unless otherwise noted, the checks listed are counterfeit and/or altered.

**The bank listed is the FDIC-insured financial institution on which the corresponding check is drawn.

***The defendants' aliases listed in the caption of this Indictment apply to Counts Two through Ten.

## COUNT ELEVEN

### (Bank Fraud)

The Grand Jury further charges:

89.    From at least on or about June 29, 2000, through on or about July 26, 2000, in the Southern District of New York and elsewhere, DOUGLAS SHYNE, the defendant, unlawfully, willfully, and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, said financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, DOUGLAS SHYNE defrauded JPMorgan Chase Bank (formerly Chase Manhattan Bank, hereinafter "Chase"), among other banks, by causing stolen checks drawn on Chase and other accounts to be deposited into investment accounts established by DOUGLAS SHYNE and others in New York, New York for the purpose of withdrawing the proceeds from such stolen checks and laundering it through accounts and corporations controlled by DOUGLAS SHYNE.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT TWELVE

### (Money Laundering Conspiracy)

The Grand Jury further charges:

90.    The allegations set forth in paragraphs 1 through 83

are repeated and realleged as if set forth fully herein.

91.   From at least in or about 2003 through in or about August 2005, in the Southern District of New York and elsewhere, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," and TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(1)(B)(i).

92.   It was a part and an object of the conspiracy that from at least in or about 2003 through in or about August 2005, in the Southern District of New York and elsewhere, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," and TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct such financial transactions, which in fact involved proceeds of specified unlawful activity, to wit, bank fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the

ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

OVERT ACTS

93.   In furtherance of the conspiracy and to effect the illegal object thereof, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," and TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," the defendants, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   In or about March 2004, a check in the amount of approximately $775,000 was stolen in New York, New York.

b.   On or about March 12, 2004, TOYBE BENNETT deposited the Stolen $775,000 Check into the Morgan Stanley Account.

c.   From on or about July 28, 2004, through on or about August 16, 2004, NATASHA SINGH deposited approximately four checks, totaling approximately $180,000, drawn on the Citibank account of Christine Richardson, into the Douglas Account.

(Title 18, United States Code, Section 1956(h).)

COUNT THIRTEEN

(Money Laundering Conspiracy)

The Grand Jury further charges:

94.   The allegations set forth in paragraphs 1 through 83

are repeated and realleged as if set forth fully herein.

95.  From at least in or about March 2005 through in or about May 2005, in the Southern District of New York and elsewhere, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," ROBERTO MONTGOMERY, EPHRAIM RICHARDSON, NARESH PITAMBAR, JASON WATLER, STEVEN RIDDICK, NATHANIEL ALEXANDER, and TIMOTHY MONTGOMERY, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(1)(B)(i).

96.  It was a part and an object of the conspiracy that from at least in or about March 2005 through in or about May 2005, in the Southern District of New York and elsewhere, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," ROBERTO MONTGOMERY, EPHRAIM RICHARDSON, NARESH PITAMBAR, JASON WATLER, STEVEN RIDDICK, NATHANIEL ALEXANDER, and TIMOTHY MONTGOMERY, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to

conduct such financial transactions, which in fact involved proceeds of specified unlawful activity, to wit, bank fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

<u>OVERT ACTS</u>

97.    In furtherance of the conspiracy and to effect the illegal object thereof, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," ROBERTO MONTGOMERY, EPHRAIM RICHARDSON, NARESH PITAMBAR, JASON WATLER, STEVEN RIDDICK, NATHANIEL ALEXANDER, and TIMOTHY MONTGOMERY, the defendants, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about April 5, 2005, DOUGLAS SHYNE sent the $375,000 Riddick Counterfeit Check by Federal Express from New York, New York, to CC-1 in Virginia Beach, Virginia.

b.    On or about April 6, 2005, STEVEN RIDDICK signed at least approximately five checks drawn on the Riddick Account.

c.    On or about April 20, 2005, TIMOTHY MONTGOMERY deposited into his Wachovia Bank account a check drawn on the Riddick Account, dated on or about April 20, 2005, in the amount

of approximately $20,000.

  d. On or about April 21, 2005, NARESH PITAMBAR deposited into his business's Citibank account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the amount of approximately $20,000.

  e. On or about May 3, 2005, NARESH PITAMBAR issued a check drawn on his Citibank account to the construction company building a fence for the residence owned by DOUGLAS SHYNE and NATASHA SINGH, in the amount of approximately $10,000.

  f. On or about April 20, 2005, EPHRAIM RICHARDSON deposited into his JPMorgan Chase bank account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the amount of approximately $10,000.

  g. On or about April 29, 2005, NATASHA SINGH deposited into her Commerce Bank account a check in the amount of approximately $8,500, drawn on EPHRAIM RICHARDSON's JP Morgan Chase bank account.

  h. On or about April 21, 2005, JASON WATLER deposited into his Citibank account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the amount of approximately $80,000.

  i. On or about April 25, 2005, NATASHA SINGH deposited into her Commerce Bank account a check in the amount of approximately $72,400, drawn on JASON WATLER's Citibank account.

  j. On or about April 26, 2005, ROBERTO MONTGOMERY

deposited into his JPMorgan Chase bank account a check drawn on the Riddick Account, dated on or about April 6, 2005, in the amount of approximately $18,000.

k.    On or about April 27, 2005, ROBERTO MONTGOMERY issued a check drawn on his JPMorgan Chase account to New York Café Lounge, in the amount of approximately $13,000.

l.    On or about April 26, 2005, NATHANIEL ALEXANDER deposited the $850,000 Counterfeit Check into the B&T Account.

m.    On or about April 27, 2005, CC-1 sent a Federal Express package from Virginia Beach, Virginia to DOUGLAS SHYNE, containing checks drawn on the B&T Account.

n.    On or about May 3, 2005, EPHRAIM RICHARDSON deposited into his JPMorgan Chase bank account a check drawn on the B&T Account, dated on or about April 27, 2005, in the amount of approximately $25,000.

o.    On or about May 3, 2005, in New York, New York, JASON WATLER deposited into his Citibank account a check drawn on the B&T Account, dated on or about April 27, 2005, in the amount of approximately $60,000.

(Title 18, United States Code, Section 1956(h).)

<u>COUNT FOURTEEN</u>

(Money Laundering Conspiracy)

The Grand Jury further charges:

98.    The allegations set forth in paragraphs 1 through 83 are repeated and realleged as if set forth fully herein.

35

99. From at least in or about June 2005 through in or about August 2005, in the Southern District of New York and elsewhere, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," and NATHANIEL SHYNE, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(1)(B)(i).

100. It was a part and an object of the conspiracy that from in or about June 2005 through in or about August 2005, in the Southern District of New York and elsewhere, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," and NATHANIEL SHYNE, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct such financial transactions, which in fact involved proceeds of specified unlawful activity, to wit, bank fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

<u>OVERT ACTS</u>

101. In furtherance of the conspiracy and to effect the

illegal object thereof, DOUGLAS SHYNE, NATASHA SINGH, a/k/a "Beatris Rodrigues," and NATHANIEL SHYNE, the defendants, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about June 8, 2005, NATASHA SINGH deposited a counterfeit check in the amount of approximately $180,000, drawn on an account at Wachovia Bank, into the Commerce Bank account of NATHANIEL SHYNE, located in New York, New York.

b.    On or about June 9, 2005, NATHANIEL SHYNE issued approximately two checks drawn on his Commerce Bank account to Christine Richardson, in the total aggregate amount of approximately $135,000.

c.    On or about July 25, 2005, CC-7 deposited into the CC-7 Account approximately two counterfeit checks in the total aggregate amount of approximately $150,000.

d.    In or about late July and early August 2005, NATHANIEL SHYNE deposited into his Commerce Bank account, located in New York, New York, approximately six checks drawn on the CC-7 Account, in the total aggregate amount of approximately $21,850.

e.    On or about August 1, 2005, approximately three checks, drawn on the CC-7 Account and made out to cash, were deposited into the Café Lounge Account.

f.    On or about August 3, 2005, NATASHA SINGH issued at least approximately three checks to herself, in the total aggregate amount of approximately $59,500, drawn on the Café

Lounge Account.

(Title 18, United States Code, Section 1956(h).)

## COUNT FIFTEEN

(Stolen Goods Conspiracy)

The Grand Jury further charges:

102. In or about November 2004, in the Southern District of New York and elsewhere, TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," and ROBERTO MONTGOMERY, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Title 18, United States Code, Section 2315.

103. It was a part and an object of the conspiracy that TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," and ROBERTO MONTGOMERY, the defendants, and others known and unknown, unlawfully, willfully, and knowingly, would and did receive, possess, conceal, store, barter, sell and dispose of goods, wares, merchandise, securities, and money of the value of $5,000 and more, which have crossed a State boundary after being stolen, unlawfully converted, and taken, knowing the same to have been stolen, unlawfully converted, and taken, to wit, TOYBE BENNETT, ROBERTO MONTGOMERY, and others used a counterfeit check to

purchase at least approximately three vehicles in Florida, which the conspirators subsequently transported or caused to be transported to New York, in violation of Title 18, United States Code, Section 2315.

<u>OVERT ACTS</u>

104. In furtherance of the conspiracy and to effect the illegal object thereof, TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a "Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a "Cecilio Pena," and ROBERTO MONTGOMERY, the defendants, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    In or about November 2004, TOYBE BENNETT sent a counterfeit check in the amount of approximately $277,000 (the "$277,000 Counterfeit Check"), drawn on a Commerce Bank account, to Euro Motor Sports in Fort Lauderdale, Florida for the purchase of approximately three vehicles.

b.    In or about November 2004, ROBERTO MONTGOMERY picked up one of the vehicles at Euro Motor Sports that had been purchased with the $277,000 Counterfeit Check.

c.    In or about November 2004, the conspirators subsequently transported or caused to be transported at least one of the vehicles purchased with the $277,000 Counterfeit Check to New York, New York.

(Title 18, United States Code, Section 371.)

39

COUNT SIXTEEN

(Naturalization Fraud)

The Grand Jury further charges:

105. From on or about June 20, 1994, up to and including on or about May 21, 2004, in the Southern District of New York and elsewhere, NATASHA SINGH, the defendant, unlawfully, willfully, and knowingly did procure and attempt to procure, contrary to law, the naturalization of a person, and documentary and other evidence of naturalization and of citizenship, to wit, in a Form N-400 (Application for Naturalization) filed by NATASHA SINGH on or about April 20, 2004 with the agency then known as the Immigration and Naturalization Service (now known as the U.S. Citizenship and Immigration Services), NATASHA SINGH claimed that she had never committed a crime or offense for which she had not been arrested and that she had worked full-time for Allstate Insurance from in or about 1992 through on or about April 20, 2004, whereas in fact, she had committed numerous offenses, as charged in Counts One through Ten and Counts Twelve through Fourteen herein, and she had been terminated from Allstate Insurance before in or about 2004.

(Title 18, United States Code, Section 1425(a).)

FORFEITURE ALLEGATION

106. As a result of committing one or more of the foregoing offenses alleged in Counts One through Ten and Counts Twelve through Fourteen of this Indictment, DOUGLAS SHYNE and NATASHA

SINGH, a/k/a "Beatris Rodrigues," the defendants, shall forfeit to the United States pursuant to 18 U.S.C. § 982, any property constituting or derived from proceeds obtained directly or indirectly as a result of the fraud offenses, including but not limited to all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 708 Meade Court, Williamstown, NJ 08094.

<u>Substitute Assets Provision</u>

107.  If the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. §
982(b), to seek forfeiture of any other property of said
defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 982 and 1344.)


_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

**DOUGLAS SHYNE, NATASHA SINGH,**
**a/k/a "Beatris Rodrigues," NATHANIEL SHYNE,**
**TOYBE BENNETT, a/k/a "Dmitriy Makarevich," a/k/a**
**"Dmitriy Makervish," a/k/a "Eduardo Rodrigues," a/k/a**
**"Cecilio Pena," ROBERTO MONTGOMERY,**
**EPHRAIM RICHARDSON, NARESH PITAMBAR,**
**JASON WATLER, STEVEN RIDDICK, NATHANIEL**
**ALEXANDER, and TIMOTHY MONTGOMERY,**

**Defendants.**

### SUPERSEDING INDICTMENT

S4 05 Cr. 1067 (KMK)

(Title 18, United States Code, Sections 2, 371, 1344, 1349,
1425(a), 1956(a)(1)(B)(i), 1956(h), 2315.)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

4-26-06

Filed Indictment. A/W Issued.

Pitman
U.S.M.J.